UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOEL J. CABALA, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. |
| | : | 3:09-cv-651 (VLB) |
| BENAMIN MORRIS | : | |
|     Defendant, | : | August 24, 2012 |

### MEMORANDUM OF DECISION GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEE [Dkt. #76]

Before the Court is Plaintiff's, Joel J. Cabala's ("Cabala") renewed motion for attorney's fees. Defendant Benjamin Morris[1] has opposed Plaintiff's request for attorney's fees arguing that Plaintiff's attorney, Joanne Faulkner, repeatedly rejected Defendant's offers of settlement in bad faith. For the foregoing reasons, the Court grants Plaintiff's motion for attorney's fee.

### Background

Plaintiff commenced this action under the Fair Debt Collection Practices Act ("FDCPA") on April 21, 2009. [Dkt. #1]. On September 9, 2010, the parties jointly filed a stipulation for judgment requesting the Court to enter judgment in favor of Plaintiff for $1,001 in damages. The stipulation indicated that the parties agreed that costs and attorney's fees were to be decided by the Court upon

---

[1] During the pendency of this action, Defendant Benjamin Morris passed away and the Court has substituted his fiduciaries Kim A. Morris and Timothy W. Crowley as Defendants in the action. See [Dkt. ##82,83,84,85]. As the briefing pending before the court was submitted prior to Defendant Morris's death, the Court will still refer to Defendant Morris in this decision for the convenience of the parties and the Court.

application.  [Dkt. #54].  On September 15, 2010, Plaintiff moved for attorney's fees in the amount of $21,665 at $350 per hour plus costs of $869.82.  [Dkt. #57, p. 2].

On October 6, 2010, Defendant opposed Plaintiff's fee application on the basis that many of the fees sought were incurred after Defendant repeatedly offered to settle this matter at its inception for all attorney fees and costs incurred to the date of the settlement offers which were repeatedly rejected by Plaintiff's counsel.  [Dkt. # 63].  Defendant indicated that Plaintiff's counsel, Attorney Joanne Faulkner, repeatedly refused to provide copies of her fee runs or invoices "claiming that the defendant was not entitled to an accounting of her 'privileged fees' until she filed a fee application." *Id.*

On October 18, 2010, Plaintiff responded arguing that a party's declining settlement offers should not operate to reduce an otherwise appropriate fee award under Second Circuit precedent.  [Dkt. #65. p.3] (citing *Ortiz v. Regan*, 980 F.2d 138, 140-141 (2d Cir. 1992)).  In *Ortiz*, the Second Circuit held that "absent a showing of bad faith, 'a party declining settlement offers should [not] operate to reduce an otherwise appropriate fee award.'" *Id.* (quoting *Cowan v. Prudential Ins. Co. of America*, 728 F.Supp. 87, 92 (D. Conn. 1990)).  In addition, Plaintiff pointed out that Defendant could have made a formal offer of judgment pursuant to Federal Rule of Civil Procedure 68 but chose not to.  Rule 68 "permits a party defending against a claim to make a settlement offer and thereby avoid any liability for costs, including attorney's fees, incurred after the making of the offer." *Id.* at 141.  Plaintiff emphasized that if Defendant had made an offer of

2

judgment he could have then moved to dismiss the action for lack of jurisdiction as an offer of judgment at the maximum amount of damages in an FDCPA action would render the action moot as there would no longer be a justiciable case or controversy. [Dkt. #65. p.2-3]; *See also Murphy v. Equifax Check Servs., Inc.*, 35 F.Supp.2d 200 (D. Conn. 1999).

On October 5, Defendant filed a supplemental response opposing Plaintiff's fee application. [Dkt. #71]. Defendant additionally argued that Attorney Faulkner did not lawfully represent Mr. Cabala in this action, did not communicate or consult with Mr. Cabala during the litigation, and unreasonably prosecuted the action in a manner to prolong litigation and incur unnecessary attorney's fees. *Id.*

On August 23, 2011, the Court denied Plaintiff's motion for attorney's fees without prejudice to renewing addressing whether the Plaintiff's refusal to settle was in bad faith. [Dkt. ##75,80]. The Court further noted that Defendant's argument that Attorney Faulkner did not lawfully represent Plaintiff in this action was unpersuasive on the basis of Attorney Faulkner's association with Attorney Pinskey. *Id.* On September 6, 2011, Plaintiff renewed his motion for attorney's fee which is currently before the Court. [Dkt. #76].

The Court has reviewed the correspondence regarding settlement between Plaintiff's counsel, Joanne Faulkner, and Defendant's counsel, David Rubin, submitted in connection with the parties' briefing. *See* [Dkt. #77, Exs. A-N]. In that correspondence, Attorney Rubin indicated that his client was offering to pay Plaintiff the maximum statutory fine of $1,000.00 without any admission of guilt or

wrongdoing and to have the Court hold a hearing on Plaintiff's attorney's fees. [Dkt. #77, Ex. N]. Attorney Rubin indicated that his client did not want to have a judgment entered against him. [Dkt. #77. Ex. C].

Attorney Faulkner responded that it was her belief that the Court can't determine fees without a finding or admission of violation in an FDCPA case and that the only way she can settle an FDCPA case is either a judgment plus fee application or a lump sum which includes attorney's fees costs and a withdrawal. [Dkt. #77, Ex. D]. Attorney Rubin repeatedly requested that Attorney Faulkner provide him with her billing records to determine the amount of fees his client was willing to pay and to evaluate settlement. [Dkt. #77, Exs. E, F, H, I]. Attorney Faulkner informed Attorney Rubin that he could see her "privileged legal bills" when she applied for a fee award. [Dkt. #77, Ex. E]. Attorney Rubin emphasized that he needed a settlement agreement that stated no admission of liability and noted that Attorney Faulkner's fees were not privileged. [Dkt. #77, Ex. F]. Attorney Faulkner repeatedly informed Attorney Rubin that if his client stipulated to judgment she would apply for fees and costs to the Court. [Dkt. #77, Exs. J, L]. The correspondence also suggests that counsel were discussing resolution of multiple claims none of which had ripened into a lawsuit.

Analysis

A. Plaintiff's rejection of Defendant's offers of settlement

Defendant has argued that Plaintiff's counsel, Attorney Faulkner, has exhibited bad faith in declining his offers of settlement by repeatedly refusing to produce her fee records and inflating her fee run. Defendant further argues that Attorney Faulkner has pursued her own interest in accruing additional attorney's

4

fees by refusing to agree to the proposed settlement at the maximum amount of damages recoverable.  Defendant contends that once he made an offer of the maximum amount of damages recoverable under the FDCPA, the Plaintiff no longer had a personal stake in the outcome of the litigation for purposes of meeting the case-or-controversy requirement of Article III.  *See Murphy*, 35 F.Supp.2d at 204.  Defendant reasons that once the Plaintiff no longer had a personal stake, Attorney Faulkner's continued prosecution of Plaintiff's claim amounted to Attorney Faulkner impermissibly pursuing her own interest in accruing attorney's fees resulting in an inappropriate acquisition of a proprietary interest in the cause of action or subject matter of litigation in violation of Connecticut Rule of Professional Conduct 1.8.[2]  Defendant also takes issue with Attorney Faulkner's unusual retainer agreement and makes several arguments regarding Attorney Faulkner's lack of communication with Plaintiff which this Court already held were unpersuasive in light of Attorney Faulkner's association with Attorney Pinskey who communicated with Plaintiff.  Defendant argues on the basis of the Second Circuit's decision in *Ortiz v. Regan* that since Plaintiff's counsel's rejection of settlement was in bad faith that should operate to reduce the fee award.

     First, the Court is not persuaded that *Ortiz* is applicable to the facts of the present case where the maximum amount of recoverable damages had been

---

[2] The Connecticut Rules of Professional Conduct have been adopted in this District pursuant to Local Rule 83.2.  *See* Local Rule 83.2 ("this Court recognizes the authority of the 'Rules of Professional Conduct,' as approved by the Judges of the Connecticut Superior Court as expressing the standards of professional conduct expected of lawyers practicing in the District of Connecticut.").

offered. In *Ortiz*, the Second Circuit explicitly held that the offer made by defendants to hold a post-deprivation hearing was not all the relief that Plaintiff was entitled to as "more was at stake here than the post-deprivation hearing offered." *Ortiz*, 980 F.2d at 140. Consequently, the Court will examine the reasonableness of Attorney Faulkner's requested fees in light of her rejection of Defendant's offers of settlement pursuant to its authority and discretion to determine a presumptively reasonable fee. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182 (2d Cir.2008).

It is apparent that Attorney Faulkner declined to accept the proposed settlement offers based on her belief that her attorney records were privileged and that attorney's fee were not recoverable absent an entry of judgment. However, neither of these two reasons is founded in law. First, it is well established that "absent special circumstances, client identity and fee information are not privileged." *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 247 (2d Cir. 1986); *Bank Hapoalim, B.M. v. American Home Assur. Co.*, No.92CIV.3561(KMW), 1993 WL 37506, at *5 (S.D.N.Y. Feb. 8, 1993) ("Documents regarding payment of fees, billing, and time expended are generally subject to discovery."); *Duttle v. Bandler & Kass*, 127 F.R.D. 46, 52 (S.D.N.Y. 1989) ("Attorneys' bills and communications regarding retainer agreements are not privileged."). Moreover, to the extent that Attorney Faulkner's billing records did contain any privileged material, Attorney Faulkner could have redacted that portion of the record. *See Sidley Holding Corp. v. Ruderman*, No.08Civ.2513(WHP)(MHD), 2009 WL 6047187, at *24 (S.D.N.Y. Dec. 30, 2009)

6

("Courts in this circuit have awarded attorneys' fees despite the redaction of privileged information in attorneys' contemporaneous time records.").

Second, Attorney Faulkner has argued that the Supreme Court's decision in *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 121 S. Ct. 1835 (2001) requires that there be an admission of liability in order for the plaintiff to be considered the "prevailing party" – which is a necessary prerequisite to this Court's jurisdiction to award attorney's fees. However it is well established that parties can contract to permit the recovery of attorney's fees under the American Rule.  *See, e.g., U.S. Fidelity and Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004) (holding that under the American Rule, it is well established that attorney's fee are "not ordinarily recoverable in the absence of statute or enforceable contract providing thereof" but that "parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law."); *Aspex Eyewear, Inc. v. Cheuk Ho Optical Intern. Ltd.*, No.00Civ.2389(RMB)(HBP), 2008 WL 4549118, at *3 (S.D.N.Y. Oct. 8, 2008) (awarding attorney's fees contractual provided for in a settlement agreement); *Home Funding Group, LLC v. Kochmann*, No.3:06CV1234(HBF), 2008 WL 4298325, at *4 (D. Conn. Sept. 18, 2008) (acknowledging that  Connecticut follows the common law American Rule and that under the rule a "'successful litigant is entitled to an award of attorney's fees if they are provided by contract'") (quoting *Jones v. Ippoliti*, 52 Conn.App. 451, 457-58 (2006)).  Here, Defendant was offering to execute a settlement agreement that would have contractually

provided for attorney's fees and therefore the Court would have had the authority to entertain Attorney Faulkner's fee application even absent an admission of liability on the part of Defendant.

Although the Court agrees that Attorney Faulkner's reasons for not providing her fee records and her insistence on obtaining a finding or admission of liability were not founded in law, it is apparent from the Court's review of the correspondence between Attorney Faulkner and Attorney Rubin that Plaintiff's rejection of Defendant's offers of settlement was not unreasonable.  Despite Attorney Faulkner's refusal to provide Attorney Rubin her fee records, she demonstrated a willingness to have the Court determine reasonable attorney's fees should the Defendant file an offer or stipulation of judgment throughout the course of the litigation.  *See* [Dkt. #77, Exs. D, J, L].  Indeed, Defendant eventually did just that and filed a stipulation for judgment with attorney's fee and costs to be decided by the Court upon application.  *See* [Dkt. #54].  Therefore Defendant's insistence on settling the matter without any admission of liability significantly contributed to the delay in the resolution of this case and the accrual of additional attorney's fees.

Consequently, Attorney Faulkner's conduct was not the sole or perhaps even the principal cause of the delay in the resolution of the matter and the accrual of additional attorney's fees as Defendant contends.  The correspondence between Attorney Rubin and Attorney Faulkner demonstrates that the parties had a legitimate dispute as to the nature and form of settlement and therefore Plaintiff's rejection of Defendant's settlement offers was not

unreasonable. Since the parties' dispute as to the terms of settlement was sincere, the rejection of the settlement offers in the instant case is not an appropriate basis to reduce the fee award. Moreover, since the dispute was sincere, the Court cannot conclude that Attorney Faulkner was simply pursuing her own pecuniary interest in accruing additional attorney's fees or had acquired a proprietary interest in the subject matter of the litigation as Defendant contends.

The availability of Rule 68 gives additional weight to this conclusion. As Attorney Faulkner repeatedly pointed out, Defendant could have made a formal offer of judgment at the inception of this lawsuit thereby avoiding any liability for costs, including attorney's fee, incurred after the offer was made. Instead, Defendant made the decision to continue to try to negotiate a settlement without admission of liability which had the effect of prolonging the litigation and increasing Plaintiff's attorney's fees. Attorney Faulkner's refusal to facilitate the Defendant's strategic objective of avoiding having a judgment rendered against it is not bad faith.

In addition, the Court does not find that Attorney Faulkner unreasonably inflated her fee run as Defendant contends. Defendant argues that on April 29, 2010, Attorney Faulkner made a lump sum settlement offer of $3,350 which was inflated by over 30% of actual costs, fees and damages. According to Attorney Faulkner's fee run, the attorney's fees accrued by April 29 were $1,242 with $350 in costs. The statutory maximum of $1,000 in damages added to the actual fees and costs Attorney Faulkner incurred as of that date totals $2,592. Therefore

Attorney Faulkner's offer of $3,350 included $758 in fees not yet incurred. Considering that Attorney Faulkner has applied for an hourly rate of $350, her April 29 offer included approximately two extra hours worth of work on the matter. The Court does find the fact that Attorney Faulkner included two to three additional hours into her request to be unreasonable in light of the fact that it would likely take her those additional hours to draft a release and close out the case. The Court therefore does not find the inclusion of additional fees representing a couple hours of work needed to close out the case after settlement into a fee estimate unreasonable.

Lastly, although Defendant takes issue with Attorney Faulkner's unusual retainer agreement which has been the subject of past scrutiny by other courts in this district, it is clear that Attorney Faulkner's retainer agreement did not contribute to the unreasonable accrual of fees in the instant matter. As noted above, from the outset Attorney Faulkner indicated her willingness to submit her fees to the Court upon an offer or stipulation of judgment. Consequently, the Court does not find that Attorney Faulkner's retainer agreement in this instant matter led Attorney Faulkner to unreasonably pursue her own economic interest in the matter.

In sum, the Court is not persuaded that Attorney Faulkner's conduct in failing to provide her fee records and insisting on an offer or stipulation of judgment resulted in the accrual of unreasonable fees which warrant a reduction in the fee award in view of the fact that Attorney Rubin insisted on negotiating a settlement without admission of liability and failed to take advantage of Rule 68 to

cut off the further accumulation of attorney's fee in the matter. The Court will now examine Attorney Faulkner's fee affidavits to determine presumptively reasonable fees.

      B. Presumptively Reasonable Fee Analysis

In a successful action pursuant to the FDCPA, a debt collector is liable to the plaintiff for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). "To determine reasonable attorneys' fees, the Second Circuit has historically implemented the lodestar method of examining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Silver v. Law Offices Howard Lee Schiff, P.C.*, No.3:09cv912(PCD), 2010 WL 5140851, at *1 (D.Conn. Dec. 15, 2010) (internal quotation marks and citation omitted). "However, in a recent decision, the court determined that '[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness.'" *Id.* (quoting *Arbor Hill,* 522 F.3d 182). "In place of the lodestar method, the court used the 'presumptively reasonable fee' standard." *Id.*

The Second Circuit has noted that "[w]hile the *Arbor Hill* panel indicated its preference for abandonment of the term 'lodestar' altogether, the approach adopted in that case is nonetheless a derivative of the lodestar method." *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 N.2 (2d Cir. 2010). In *Arbor Hill*, the Second Circuit instructed that:

> [T]he better course – and the one most consistent with attorney's fees jurisprudence – is for the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the

11

> reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Arbor Hill*, 522 F.3d at 190.

Consequently, courts have described the "presumptively reasonable fee" analysis as a "process" that is "really a four-step one, as the court must: '(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award.'" *Vereen v. Siegler*, No.3:07CV1898, 2011 WL 2457534, at *1 (D. Conn. June 16, 2011) (quoting *Adorno v. Port Authority of New York and New Jersey*, 685 F.Supp.2d 507, 510 (S.D.N.Y. 2010)). Here, Attorney Faulkner seeks an award in the amount of $32,489.29 in fees and costs for 89.61 hours at a $350 hourly rate.

   i.   *Reasonable Hourly Rate*

In *Arbor Hill*, the Second Circuit indicated the relevant factors in determining the reasonable hourly rate were articulated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to

12

>acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d 717-19.

Reasonable hourly rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998). The determination of a prevailing rate requires a 'case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" *M.K. ex rel. K. v. Sergi,* 578 F.Supp.2d 425, 427 (D. Conn. 2008) (quoting *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005)).

Attorney Faulkner has requested a rate of $350 per hour which is consistent with the rate Attorney Faulkner has been awarded in past FDCPA cases in this district. *See Silver*, 2010 WL 5140851, at *2 (finding that $350 is Attorney's Faulkner's "customary hourly rate and the same hourly fee awarded to her in similar cases."); *Ellis v. Solomon & Solomon, P.C.*, No.3:05-cv1623(JBA), 2009 WL 3418231, at *2 (D. Conn. Oct. 20, 2009) (finding that Attorney Faulkner's hourly rate of $350 is "well within the range of comparable attorney billing rates attested to by counsel and independently known to the Court from fee applications"); *Cooper v. Ellis*

13

*Crosby & Assocs., Inc.*, No.3:05cv1467(MRK), 2007 WL 1322380, at *3 n.3 (D. Conn. May 2, 2007) (approving Attorney Faulkner's hourly rate of $350 based on the Court's review of awards to counsel with similar experience and based on the Court's familiarity with prevailing rates in Connecticut.). Moreover, Defendant conceded in his opposition to Plaintiff's first motion for attorney's fees that he does not object to the proposed hourly rate. [Dkt. #62, p. 3]. Consequently, Attorney Faulkner's requested hourly rate of $350 is in line with prevailing rates and her customary hourly rate.

    ii.   *Reasonableness of time spent*

"The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). Here Attorney Faulkner has submitted billing records for 89.61 hours of work. See [Dkt. ## 57, 76]. Attorney Faulkner's fee affidavits contain sufficiently specific and detailed time records indicating the nature and relevance of the work performed which evince a high degree of efficiency. *Id.*

Defendant generally objects to the amount of time spent by Attorney Faulkner drafting certain motions and documents in light of her substantial experience in prosecuting FDCPA actions. See [Dkt. #62, p. 20-22]. Defendant contends that it is improper to demand $2,000 for drafting a nine paragraph one page form complaint. *Id.* Defendant further argues without citation to any caselaw or authority that Attorney Faulkner is not entitled to

14

fees related to work or arguments that were subsequently abandoned by the plaintiff and points to the entries on September 21, 2009 and October 19, 2009 in connection with a motion for a protective order that Attorney Faulkner filed and then subsequently withdrew. *Id.*

Contrary to Defendant's contentions, it does not appear after a review of Attorney Faulkner's fee records that they include excessive, redundant or otherwise unnecessary hours. For example, Attorney Faulkner billed 6.25 hours to research, prepare and draft an eight page motion for summary judgment, including the drafting of a Local Rule 56 statement, collecting the accompany exhibits and drafting a supporting affidavit. *See* [Dkt. #42]. Attorney Faulkner billed 5.5 hours to draft an eleven page reply brief in support of summary judgment which was substantially longer and included more substantive analysis then her original motion for summary judgment. *See* [Dkt. #49]. The Court does not find that one day's worth of work spent on a motion for summary judgment and reply brief in support of summary judgment was unreasonable even in light of the rather straightforward nature of this case. Indeed, Attorney Faulkner's fee records demonstrate that she pursued this matter efficiently as a result of her expertise.

Further, Attorney Faulkner did not charge $2,000 to draft a nine paragraph complaint as Defendant contends. Attorney Faulkner's fee affidavit indicated that she billed 1.25 hours to draft the complaint, cover and summons resulting in fees of $507.50. To the extent that Attorney

15

Faulkner may have spent more time than was optimally necessary to draft a straightforward form complaint and summons, her efficient work on the summary judgment motion and other work on this matter indicate that her fees are not unreasonable or excessive. After reviewing Attorney Faulkner's detailed fee records, this Court concludes that the attorney's fees and costs sought are reasonable.

Lastly, this Court sees no reason why Attorney Faulkner should not be entitled to fees related to work or arguments that were subsequently abandoned where there was a non-frivolous basis to pursue such work or arguments in the first instance. It is entirely reasonable if not part and parcel of attorney's obligation to zealously advocate to research and pursue strategies that an advocate may ultimately conclude is advantageous to abandon or withdraw. Where the strategy or work was not frivolous in the first instance, an attorney should be entitled to those fees as time reasonably spent pursuing the matter. Here, Attorney Faulkner filed a motion for a protective order against a noticed deposition of her client on the basis of her belief that the subject of the noticed deposition was irrelevant to the claims at issue. *See* [Dkt. #15]. Defendant opposed the protective order on the grounds that the subject of the deposition was relevant to its defense of materiality. Upon review of Defendant's opposition, Attorney Faulkner did not persist in her motion but apparently conceded that Defendant had a basis for the noticed deposition and shortly afterward withdrew her motion. Because her initial motion for a

protective order was not frivolous, Attorney Faulkner should be entitled to fees in connection with such work.

Since the Court has found that the requested hourly rate by Attorney Faulkner is reasonable and the time spent by Attorney Faulkner is also reasonable, the presumptively reasonable fee is appropriately set at $32,489.29 including both fees and costs.  Further as discussed above, the Court sees no reason why the presumptively reasonable fee should be adjusted downward.

### Conclusion

For the foregoing reasons, the Court GRANTS Plaintiff's renewed motion for attorney's fees.  The Court awards $32,489.29 including both fees and costs.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: August 24, 2012